**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LIFECARE MANAGEMENT SERVICES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ZENITH AMERICAN SOLUTIONS, INC. et al., <br><br> Defendants. | 3:15-cv-0307-RCJ-VPC <br><br> **ORDER** |

This case involves a hospital's claim under the Employee Retirement Income Security Act ("ERISA") that a trust fund and its third-party administrators improperly denied the hospital benefits under the trust fund's welfare benefit plan. Pending before the Court are two Motions to Dismiss (ECF Nos. 15, 17). For the reasons given herein, the Court denies the motions.

I.      **FACTS AND PROCEDURAL HISTORY**

Plaintiff LifeCare Management Services, LLC seeks to enforce the terms of a welfare benefit plan on behalf of its patient under ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiff also alleges violation of Section 1132(c)(1)—refusal to supply requested information. Defendants are Electrical Workers Health and Welfare Trust Fund ("Trust Fund") and two third-party administrators: Zenith American Solutions, Inc. ("Zenith") and BeneSys, Inc. ("BeneSys").

1    Beginning in October 2011, Jane Doe ("the Patient") received medical treatment at Tahoe

2   Pacific Hospital ("the Hospital") in Reno, NV, a facility owned by Plaintiff. (Compl. ¶¶ 4, 12,

3   ECF No. 1). The Patient was a relative of John Doe who was insured under Trust Fund's health

4   plan ("the Plan"). (*Id.* ¶¶ 8–10). Plaintiff alleges the Patient had exhausted her Medicare Part A

5   benefits and, therefore, the Plan was the Patient's primary insurance responsible for paying the

6   costs of her treatment. (*Id.* ¶¶ 14–15). On January 26, 2012, the Hospital submitted an

7   application for payment of the Patient's charges totaling $887,851.54 to Zenith, a third-party

8   administrator of the Plan. (*Id.* ¶¶ 5, 20–21). Trust Fund paid the Hospital $138,464.62, whereas

9   Plaintiff alleges Trust Fund should have paid eighty-five percent of the unreimbursed charges, or

10   $750,341.52.[1] (*Id.* ¶¶ 24–25).

11    From August 2012 through April 2013, Plaintiff contacted Zenith numerous times

12   seeking further reimbursement, information about the Plan, and updates on the status of its

13   requests. (*Id.* at 5–9). On May 13, 2013, Plaintiff received a letter from Trust Fund stating

14   Plaintiff's claim had been processed correctly. (*Id.* ¶ 40). That same day, Plaintiff filed a formal

15   appeal. (*Id.* ¶ 41). From June 2013 through September 2013, Plaintiff contacted Zenith several

16   times to receive an update on the status of its appeal. (*Id.* at 7–8). On October 31, 2013, Zenith

17   told Plaintiff Trust Fund's Board of Trustees ("the Board") had decided to uphold the prior

18   decision, but Plaintiff did not receive written confirmation of the Board's decision. (*Id.* ¶¶ 52–

19   57).

20    On December 4, 2014, Plaintiff received a call from BeneSys—"a new third-party

21   administrator for the [Trust] Fund." (*Id.* ¶ 60). BeneSys told Plaintiff the Board "had no record of

22   Plaintiff's claim or appeal ever having been presented to them." (*Id.* ¶ 62). BeneSys then

23

---

[1] The Hospital received $4,332.28 from Medicare Part B to cover a portion of the charges. (*Id.* ¶
24   23).

1   discussed the issue with Trust Fund attorneys, (*id.* ¶¶ 61–65), who sent Plaintiff a letter on

2   January 12, 2015 denying Plaintiff's request for further reimbursement, (*id.* ¶ 66; Letter from

3   Trust Fund, ECF No. 23, at 37–38).

4          Plaintiff filed four claims under ERISA against all three Defendants: (1) claim for

5   benefits; (2) failure to supply requested plan information; (3) breach of fiduciary duty of loyalty

6   and care; and (4) failure to provide full and fair review. Defendant Zenith filed a Motion to

7   Dismiss (ECF No. 15), and Defendants BeneSys and Trust Fund filed a separate Motion to

8   Dismiss (ECF No. 17). Defendants ask the Court to dismiss Plaintiff's claims pursuant to Federal

9   Rules of Civil Procedure 12(b)(6). In its responses, Plaintiff voluntarily dismissed claims three

10  and four, (Pl.'s Resp. to Zenith's Mot. to Dismiss, at 22; Pl.'s Resp. to Trust Fund's and

11  BeneSys's Mot. to Dismiss, 16, ECF No. 24), and it has conceded that its second claim applies

12  only to Trust Fund, not to Zenith or BeneSys. (Pl.'s Resp. to Zenith's Mot. to Dismiss, at 22). As

13  a result, the Court considers whether to dismiss Count I as to all Defendants and Count II only as

14  to Defendant Trust Fund.

15  **II.      LEGAL STANDARDS**

16         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

17  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

18  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

19  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

20  that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule

21  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

22  F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for

23  failure to state a claim, dismissal is appropriate only when the complaint does not give the

24

1    defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

2    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is

3    sufficient to state a claim, the court will take all material allegations as true and construe them in

4    the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

5    Cir. 1986). The court, however, is not required to accept as true allegations that are merely

6    conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

7    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

8           A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a

9    plaintiff must plead facts pertaining to his own case making a violation "plausible," not just

10   "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556)

11   ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is,

13   under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a

14   cognizable legal theory (*Conley* review), but also must allege the facts of the plaintiff's case so

15   that the court can determine whether the plaintiff has any basis for relief under the legal theory

16   the plaintiff has specified or implied, assuming the facts are as the plaintiff alleges (*Twombly-*

17   *Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a

18   legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally

19   to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is

20   complete and that liability necessarily follows therefrom, assuming the allegations are true.

21          The court should not dismiss a case based on an affirmative defense unless the elements

22   of the defense appear on the face of the pleading to be dismissed. *Rivera v. Peri & Sons Farms,*

23   *Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Where an affirmative defense is not clear from the face

24

1   of the complaint sought to be dismissed, it cannot be determined until (at least) the summary

2   judgment stage; it cannot be treated as a quasi-summary-judgment matter under Rule 12(b).

3   *Albino v. Baca*, 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*,

4   315 F.3d 1108 (9th Cir. 2003)).

5        "Generally, a district court may not consider any material beyond the pleadings in ruling

6   on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the

7   complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

8   *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents

9   whose contents are alleged in a complaint and whose authenticity no party questions, but which

10   are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

11   motion to dismiss" without converting the motion to dismiss into a motion for summary

12   judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule

13   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

14   *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court

15   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

16   summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

17   2001).

18   **III.   ANALYSIS**

19       **A.   Count I—Claim for Benefits**

20       Defendants make three arguments for dismissing Count I: (1) Zenith and BeneSys are not

21   liable as third-party administrators; (2) Plaintiff's Complaint was untimely; and (3) Plaintiff

22   failed to state a sufficient claim regarding benefits coverage.

23   ///

24

1

2

### 1.      Third-Party Administrators

Defendants Zenith and BeneSys argue that as third-party administrators of the Plan they are not proper defendants. This argument is an affirmative defense;[2] thus, the Court must wait to determine this issue at the summary judgment stage unless the elements of the defense appear on the face of the Complaint.

### a.      Defendant Zenith

Zenith argues that third-party administrators, and particularly former administrators, are not proper defendants in cases involving claims for benefits under ERISA. Under Section 132(a)(1)(B), proper defendants "at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014). A plaintiff can also bring suit to recover benefits against a plan fiduciary, which is any entity that exercises any discretionary authority or control over the plan's management, administration, or disposition of assets. *Id.* at 1297–98 (quoting 29 U.S.C. § 1002(21)(A); citing *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.,* 703 F.3d 835, 844–45 (5th Cir.2013) ("holding that a third-party administrator that neither was designated as the plan administrator nor was responsible for paying claims was nonetheless a proper defendant based on the control it exercised over benefits claims processing")).

In *Spinedex*, the Ninth Circuit identified as proper defendants "de facto plan administrators that improperly deny or cause improper denial of benefits." *Id.* at 1297. Although

---

[2] *See, e.g.*, *Law v. Hunt Cnty., Texas*, 830 F. Supp. 2d 211, 212-13 (N.D. Tex. 2011).

the court did not expound upon what makes an entity a "de facto plan administrator," one

purpose of the opinion was to clarify the court's holding in *Cyr v. Reliance Standard Life*

*Insurance Co.*, 642 F.3d 1202 (9th Cir. 2011) (en banc)—a case that sheds light on what a de

facto plan administrator might be. In *Cyr*, Reliance, an insurance company, was not the plan

administrator but "denied Cyr's request for increased benefits even though . . . it was responsible

for paying legitimate benefits claims." *Id.* at 1207. In contrast, CTI, the plan administrator, "had

nothing to do with denying Cyr's claim for increased benefits." *Id.* Thus, Reliance was "a logical

defendant for an action by Cyr to recover benefits due to her." *Id.* In other words, Reliance was a

"de facto plan administrator," as identified in *Spinedex*, because "Reliance effectively controlled

the decision whether to honor or to deny a claim under the program," even though "Reliance was

not identified as the plan administrator." *Id.* at 1204.

The elements of Zenith's defense do not appear on the face of the Complaint. The

Complaint alleges that Zenith is a de facto plan administrator that denied Plaintiff benefits—not

the opposite. According to the Complaint, Plaintiff contacted Zenith numerous times seeking

further reimbursement. (Compl. at 5–7). Zenith told Plaintiff that "no additional payment would

be made." (*Id.* ¶ 33; *see also id.* ¶ 35). Zenith told Plaintiff it had given Plaintiff's formal appeal

to the Board, and on October 31, 2013 Zenith said the Board had decided to uphold Zenith's

decision not to provide additional benefits. (*Id.* ¶¶ 47–52). However, Plaintiff alleges that in

December 2014 "BeneSys told Plaintiff the Fund's Board of Trustees had no record of Plaintiff's

claim or appeal ever having been presented to them." (*Id.* ¶ 62). Not until January 12, 2015 did

Plaintiff receive a letter from the Fund's attorneys denying Plaintiff's request for further

reimbursement following Plaintiff's formal appeal. (*Id.* ¶ 66).

1         Thus, the Complaint shows that like the plan administrator in *Cyr*, Trust Fund "had

2    nothing to do with denying [Plaintiff's] claim for increased benefits," *Cyr*, 642 F.3d at 1207, at

3    least not until January 2015—after BeneSys brought Plaintiff's request to the Board's attention.[3]

4    If anything, the Complaint alleges that Zenith independently denied Plaintiff's formal appeal of

5    the decision to deny Plaintiff additional benefits, all without Trust Fund's knowledge. In other

6    words, Plaintiff alleges that Zenith was a de facto administrator that denied Plaintiff's request for

7    further reimbursement because like Reliance in *Cyr*, "[Zenith] effectively controlled the decision

8    whether to honor or to deny a claim under the program," even though "[Zenith] was not

9    identified as the plan administrator." *Id.* at 1204.

10         Defendant Zenith argues it is not a proper defendant as a *former* third-party administrator

11    because "it would have no ability to cause Plaintiff to receive any additional benefits from the

12    Plan." (Zenith's Mot. to Dismiss, 9). As evidence, it cites *Jones v. Life Ins. Co. of N. Am.*, No.

13    08-03971, 2015 WL 1433998, at \*1, 3 (N.D. Cal. Mar. 30, 2015) (holding that a former claims

14    administrator was not a proper defendant, even following *Spinedex*, because it "had no authority

15    to resolve benefit claims or pay benefit claims"). However, even if Zenith is a former third-party

16    administrator, the Complaint alleges that Zenith denied Plaintiff's request for further

17    reimbursement at its sole discretion. As a result, Zenith might be a de facto plan administrator

18    that improperly denied Plaintiff benefits and, thus, "a logical defendant for an action by

19    [Plaintiff] to recover benefits due to her under the terms of the plan." *Cyr*, 642 F.3d at 1207.

20         The face of the Complaint alleges that as a de facto plan administrator Defendant Zenith

21    should be liable for reimbursing Plaintiff's benefits because it improperly denied Plaintiff further

22    reimbursement. Because the affirmative defense is not on the face of the Complaint, the Court

23

24

---

[3] According to the Complaint, if BeneSys had not intervened as a new third-party administrator, then the Board might not ever have known about Plaintiff's claim and appeal.

1   must defer Zenith's argument to at least the summary judgment stage. The Court denies the

2   motion to dismiss Count I as to Zenith.

3          **b.        Defendant BeneSys**

4          As an initial matter, Defendant BeneSys argues Plaintiff consented to granting its motion

5   to dismiss pursuant to Local Rule 7-2(d)[4] because Plaintiff failed to respond to the motion as to

6   BeneSys. While Plaintiff did fail to respond directly to BeneSys's argument, it provided points

7   and authorities in response to Zenith's motion to dismiss that also apply generally to BeneSys.

8   (*See* Pl.'s Resp. to Zenith's Mot. to Dismiss, 15–17).[5] The Court does not dismiss Count I as to

9   BeneSys on this account.

10          The face of the Complaint does not clearly show BeneSys is absolved from liability as a

11   third-party administrator. Defendants argue the Plan's terms give Trust Fund's trustees "sole and

12   absolute discretionary authority" to determine eligibility and benefit amounts under the Plan.

13   (*See* Zenith's Mot. to Dismiss, 13; Summary Plan Description, ECF No. 17-1, at 9–10).[6]

14   Notwithstanding these terms, the Complaint suggests that in practice BeneSys worked

15   extensively with Trust Fund to determine whether Plaintiff should receive further

16   reimbursement. (Compl. ¶¶ 60–65). For example, Plaintiff alleges that BeneSys "had a call with

17   the 'Fund's Professional,'" (*id.* ¶ 61), negotiated a discount offered by Plaintiff, (*id.* ¶ 63–64),

18   and engaged "in conversation with the Fund's attorneys about whether the Fund was obligated to

19

20   [4] "The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." LR 7–2(d).

21   [5] Plaintiff also mentioned in its response to BeneSys's motion to dismiss that "each of Defendants' claims is addressed in the Hospital's response to Zenith's motion to dismiss, the

22   arguments against which also are incorporated here." (Pl.'s Resp. to BeneSys's Mot. to Dismiss, 3, ECF No. 24).

23   [6] Although Plaintiff did not attach this portion of the Plan's terms to its Complaint, the Court can consider other pages of the Plan in a motion to dismiss because Plaintiff did attach a portion of

24   the terms to its Complaint, and no party has questioned its authenticity. *Branch*, 14 F.3d at 454.

1    pay the Facility Service Agreement Rates," (*id.* ¶ 63). Also, Plaintiff alleges that as a predecessor

2    to BeneSys, Zenith decided alone to deny Plaintiff's claim for additional reimbursement and its

3    appeal without presenting the matter to Trust Fund's Board. (*Id.* ¶ 62). Accepting these

4    allegations as true, nothing in the Complaint suggests BeneSys cannot deny benefits in the way

5    Zenith did. Thus, the face of the Complaint does not show BeneSys has no authority or role in

6    paying or denying benefits. The Court denies the motion to dismiss Count I as to BeneSys at this

7    stage.

8        **2.      Timeliness of the Complaint**

9        Defendants BeneSys and Trust Fund argue Plaintiff's suit is untimely. The argument that

10   a plaintiff failed to comply with deadlines for filing suit is an affirmative defense, *Rivera v. Peri*

11   *& Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013); thus, the elements of the defense must

12   appear on the face of the Complaint; otherwise, the Court must defer Defendants' argument to at

13   least the summary judgment stage.

14       The Complaint does not clearly show Plaintiff's filing was untimely. The Plan's terms

15   require a beneficiary to file a lawsuit within ninety days of completing the appeals process,

16   (Summary Plan Description, 9); however, the Complaint does not show whether the appeals

17   process was ever completed. Plaintiff states it filed a formal written appeal on May 13, 2013,

18   (Compl. ¶ 41), and that on October 31, 2013 Zenith informed Plaintiff that "the Board of

19   Trustees was upholding the processing decision," (*id.* ¶ 52). But Plaintiff alleges it never

20   received written notice of the denial of its appeal, including the specific reasons for denying it, as

21   required by the Plan's summary. (*Id.* ¶¶ 52–58; Summary Plan Description, 8). Further, Plaintiff

22   alleges that Zenith said "the Fund's Board of Trustees had no record of Plaintiff's claim or

23   appeal ever having been presented to them." (Compl. ¶ 62). Also, Trust Fund's attorneys sent

24

Plaintiff a letter on January 12, 2015 indicating that "[t]he IBEW Trust received no appeals

under its appeals procedures from the Trust Participant regarding Zenith's adjudication of these

claims." (*Id.* ¶ 66; Letter from Trust Fund, 37). If the Board is responsible for reviewing and

deciding appeals, (*see* Summary Plan Description, 7), but the Board never saw the formal appeal,

then the ninety-day limitations period might not have begun to run. It is possible Trust Fund did

decide the appeal,[7] but the Complaint does not show whether the appeals process was completed

and, thus, when, or if, the limitations period began. The affirmative defense is not clear on the

face of the Complaint, so the Court must also defer this argument to the summary judgment

stage.

### 3. Claim for Benefits

Defendants argue Plaintiff has failed to state a claim for benefits. Under ERISA, "a

participant or beneficiary" may bring a civil action "to recover benefits due to him under the

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan." 29 U.S.C. § 1132(a). Plaintiff has alleged that the Patient

was covered by a health plan governed by ERISA and operated or administered by Defendants.

(Compl. ¶¶ 4–10). Plaintiff alleged that the Patient assigned her plan benefits to Plaintiff. (*Id.* ¶

13). Plaintiff further alleges it submitted a claim to Defendants for reimbursement of services it

provided to the Patient, and that based on the Patient's health insurance circumstances

Defendants refused to pay the amount the Plan requires. (*Id.* ¶¶ 20–26, 68–72).

Defendants make various arguments that Plaintiff has misinterpreted the Plan and the

applicable laws and regulations. At this stage, these arguments are unavailing. Plaintiff has pled

---

[7] In fact, Defendants argue Trust Fund denied Plaintiff's appeal "at the latest, by Trust Fund counsel's January 12, 2015 letter." (BeneSys's Reply, 5, ECF No. 26).

1  sufficient facts to make a plausible claim for benefits. It has presented a legally cognizable claim

2  and the grounds on which it rests.

3     The Court denies Defendants' motions to dismiss Count I as to Zenith, BeneSys, and

4  Trust Fund.

5     **B.     Count II—Failure to Supply Requested Plan Information**

6     Defendants make two arguments for dismissing Count II: (1) Plaintiff's Complaint was

7  untimely; and (2) Plaintiff lacks standing to assert the claim.

8     **1.     Timeliness of the Complaint**

9     The analysis in Section III(A)(2) applies here as well. The Complaint does not show

10  whether the appeals process was completed and, thus, when, or if, the limitations period began.

11  The affirmative defense is not clear on the face of the Complaint, so the Court must defer this

12  argument to the summary judgment stage.

13     **2.     Standing**

14     Defendant Zenith argues Plaintiff has no standing to make this claim because the

15  Complaint alleges the Patient assigned her "insurance or Plan benefits to the Hospital," but not

16  "the patient's right to assert claims for breach of duty or to seek statutory penalties." (Zenith's

17  Mot. to Dismiss, at 15–16). Because lack of standing is an affirmative defense, the defense must

18  be clear on the face of the Complaint. It is not.

19     Plaintiff alleged: "The Patient Consent to Treatment Admission Form at §§ 8-9, p. 2 also

20  includes Jane Doe's assignment of her *insurance or Plan benefits* to the Hospital and treating

21  physicians." (Compl. ¶ 13) (emphasis added). Zenith argues correctly that this statement says

22  nothing about the Patient's right to assert claims for breach of duty or to seek statutory penalties.

23  However, the Complaint does not say the Admission form did not assign these other rights to

24

1  Plaintiff;[8] thus, the elements of the defense are not clear on the face of the Complaint. The Court

2  denies Defendant Zenith's motion to dismiss Count II entirely, but, as conceded by Plaintiff, this

3  claim applies only to Defendant Trust Fund.

4  **CONCLUSION**

5      IT IS HEREBY ORDERED that Zenith's Motion to Dismiss (ECF No. 15) is DENIED.

6      IT IS FURTHER ORDERED that BeneSys's and Trust Fund's Motion to Dismiss (ECF

7  No. 17) is DENIED.

8      IT IS FURTHER ORDERED that Counts III and IV are dismissed without prejudice.

9      IT IS SO ORDERED.

10  DATED:  This 13th day of November, 2015.

11

12  _____

        ROBERT C. JONES

13          United States District Judge

14

15

16

17

18

19

20

21

---

[8] Indeed, Plaintiff provided the remainder of the assignment statement in its Response, which

22  specifically states the Patient assigned "any rights the collection of damages or penalties related
to the insurance company's failure to timely or expeditiously pay a claim." (Resp. to Zenith's

23  Mot. to Dismiss, 21). Although the Court can consider this statement because Plaintiff referred to
it in its Complaint, there is no need to because the affirmative defense does not appear on the

24  face of the Complaint.